Affidavits by the sheriff and his deputy were filed, and copies of a deed and mortgage from the said defendant to the above named *Rebecca* and *Eliza Goodwin*. The facts set forth in the reasons were supported by the affidavits. In support of the rule he referred to 1 *East.* 338. 3 *Bos. and Pul.* 288. 2 *Tids. Prac.* 928. 7 *Term Rep.* 174. *Sellon's Prac.* 527.

BUCHANAN, Ch. J.

In enlarging the rule in this case, the Court wish to be understood as laying down no general rule. Each case must depend upon its own circumstances; and here we think, upon the reasons and proofs, there is sufficient reason to interfere.

Rule on the plaintiff made absolute, and the rule on the sheriff enlarged to the first day of the next term.

STATE OF MARYLAND *vs.* LABAN WALSH.—*June,* 1830.

A final release under the insolvent laws of this State, obtained by a debtor to the State, after judgment rendered against him, will protect him from a *ca. sa.* on such judgment; and if arrested, the Court will discharge him on motion.

APPEAL from *Baltimore* County Court.

At March term, 1825, the State of Maryland recovered judgment in an action of *Debt,* against *Laban Walsh,* the appellee, who was a security in the bond of one of the collectors of the State tax, and in that character indebted to the State. On the 11th October, 1828, the appellee was reported to be entitled to his final discharge under the Insolvent Laws of the State, by the Commissioners of Insolvent debtors for the city and county of *Baltimore,* and on that day was accordingly discharged by *Baltimore* County Court. On the 23d March, 1829, the State sued out a writ of *capias ad satisfaciendum* on the aforesaid judgment,

and the appellee was arrested, and brought before *Balti-more* County Court for commitment. He thereupon moved the Court for his discharge from the custody of the sheriff, on the ground that he had applied for the benefit of the Insolvent Laws of Maryland, and obtained a final discharge since the rendition of the judgment aforesaid. And *Balti-more* County Court [ARCHER, C. J.] accordingly discharged him. The State appealed to this Court.

The cause was argued before BUCHANAN, Ch. J. EARLE, and STEPHEN, A. J.

*Taney*, (Atty. Genl.) and *Gill*, for the State, contended, that the insolvent laws of *Maryland* do not apply to the *State*. The *State* is not a creditor within their meaning; and the rights of the *State* against the persons of her debtors, are not restrained by them. They said that the insolvent laws of Maryland did not bar the *State* in the prosecution and recovery of her debts. The act of 1805, *ch.* 110, was the basis of the system, and when first enacted was a mere private act, for the relief of the persons mentioned in it. One of its provisions (Sect. 3,) required the debtor at the time of presenting his petition, to produce to the Court which was to grant the discharge, " the assent in writing of so many of his creditors, as have due to them the amount of two-thirds of the debts due by him at the time of his application " for relief. Foreign creditors not residing within the United States, or not having agents therein authorised to act in their behalf, are not to be considered as creditors within the meaning of the act. The 2d section required the Court, to which the application might be made, to direct personal notice of the application to be given to the creditors, or their agents, or public notice to be given where the debtor resides, and on the appearance of the creditor, or neglect to appear at the times and place appointed, the Court is to proceed with the consideration of the case. By the 9th section, creditors were au-

thorised to file allegations of fraud against the insolvent to vacate his discharge.

When the Legislature was making these various provisions requiring assent of creditors, and notice to creditors to be given, and authorising creditors to proceed against a fraudulent insolvent, it could not have escaped their attention, that no officer was empowered to act for the public—none entrusted to give the required assent to confer jurisdiction on the discharging court; none indicated to whom notice might be given, nor whose duty it was to take notice of the advertisement. Under these omissions in material and important particulars, essential to preserve the integrity of the system, to confer jurisdiction on the Court, and guard the rights of creditors, and consequently directly affecting the debts of the public, and leaving the *State,* in her character of creditor, entirely unrepresented, it is insisted that she is not a creditor within the spirit and meaning of the original system, and was not intended to be barred by it. There is no power short of the Legislature which can release a public debt; and when that authority, acting in the ordinary course of legislation, passes a law releasing debts generally, without any particular mention of the *State,* a question arises upon a fair construction of the whole law, whether the *State's* debts were intended to be released. If as many reasons tending to form an exception in favor of an individual could be found, it would be contended that a discharge under this system, would be no discharge of the claim of such individual.

It is true that the authority to discharge, conferred upon the Court, is in its term broad enough to include the *State's* debt. The Court has power to order that the debtor shall be discharged, " as well from all debts, covenants, contracts, promises and agreements due from, or owing, or contracted in his individual, as also in a co-partnership capacity, by him," before the time of his application, " provided that no person who has been guilty of a breach of the law, and hath been fined, or is liable to be fined for such breach, shall be

discharged from the payment of any fine incurred for any breach of the laws of this *State*," but the question still remains what creditors shall lose their rights, what debts are to be barred? Answer, all debts due to persons who have a capacity and right to act under, and be affected by the conditions and principles upon which the discharge is to be obtained. The conditions and principles upon which the discharge is obtained, constitute the consideration upon which it is granted—the inquiry is therefore always open, as to what class of creditors is not affected by it. No argument can be drawn from the proviso, which is not an exception, nor in the nature of an exception; if the proviso had not been introduced into the act, a discharge from debts and covenants would not have released judgments for fines and breaches of the criminal code. It must therefore be considered as introduced *ex abundante cautela*.

It is true that the act of 1805, has, since its passage, been converted into a general system, by a legislative declaration that all insolvents may avail themselves of it, yet that does not change its construction in relation to creditors. They contended that a "law is the best expositor of itself—that every part of an act is to be taken into view for the purpose of discovering the legislative mind, and that the details of one part may contain regulations restricting the extent of general expressions used in another part of the same act;" that this was an undisputed rule in the construction and application of statutes, and one which applied directly to the act in question, when set up as a bar to a demand of the State. That the details of the insolvent debtors' act restrain its general expressions, and confine its application to those creditors only who could comply with its provisions.

It is contended, moreover, that the State has a preference over all claims, except liens, upon the insolvent debtors' estate. If she is to be considered as embraced within the term creditor, instead of a priority she would have to come in with other creditors for a distributive share. This would

produce a loss to the public not contemplated by the legis-lature.

They cited *acts of* 1805, *ch.* 110, *sec.* 2. 1807, *ch.* 150, *sec.* 4. 1812, *ch.* 77, *sec.* 2, 5. *Cox Dig.* 638. *Pennington vs. Coxe,* 2 *Cranch,* 33, 52. *State vs. Stump and Gilpin,* 2 *Harr. and McHen.* 174. *Murray vs. Ridley, admr.* 3 *Harr. and McHen.* 177. *Wood vs. Repold,* 3 *Harr. and Johns.* 127. *State vs. Rogers and wife,* 2 *Harr. and McHen.* 198. *Contee vs. Chews, ex'tr.* 1 *Harr. and Johns.* 417. *Kip vs. Bank New York,* 10 *Johns.* 63. *Kennedy vs. Strong,* 10 *Johns.* 289. *Act of* 1792, *ch.* 51.

No counsel appeared for the appellee.

**JUDGMENT AFFIRMED.**

---

BARGER, *et ux. Ex'rs of* ATHEY *vs.* COLLINS.—*June,* 1830.

A proved a settlement with C on the 1st March, 1820, shewing a balance due him of $1013, for building certain houses. C, under notice of set-off, established payments to the amount of $195; and to shew that A had no separate right of action, proved that he was a partner in two firms, one of which furnished the bricks, and the other did the brick work of the houses, and both of which rendered accounts in 1818 and 19, amounting to $2850, for their respective claims. He also proved various receipts, during the same years, of the individual partners of those firms for payments made to them—some on account of such buildings generally—some for bricks, — some for brick work, amounting in the whole to $1310. A then offered to prove by one of his former partners, that his firm was dissolved about the close of 1819, and its debts assigned to A. The county court admitted the witness, and held that the settlement in 1820, was evidence of C's knowledge of the dissolution of that firm, and the transfer of its debts to A; but no evidence of the dissolution of the other firm being given, that court also decided that the whole evidence did not furnish competent proof of any balance being due to A individually. Upon appeal, held that this was a question of fact for the jury.

APPEAL from *Baltimore* County Court.

Action of *Assumpsit.* The declaration contained counts for work and labor, and materials found and provided, &c. For money laid out and expended; and on an *insimul com-*